# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAMUEL TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-877-M |
| | ) |
| MERCY TISHOMINGO HOSPITAL | ) |
| CORPORATION, a domestic not for | ) |
| profit corporation, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This case is scheduled for trial on the Court's August 2015 trial docket.

Before the Court is Defendant Mercy Tishomingo Hospital Corporation's ("Mercy Tishomingo") Motion for Summary Judgment and Brief in Support, filed March 27, 2015. On May 11, 2015, plaintiff responded, and on May 18, 2015, Mercy Tishomingo replied. Based on the parties' submissions, the Court makes its determination.

## I. Introduction[1]

Plaintiff is a black 56 year-old Bohemian man, who was employed with Mercy Tishomingo as a physician assistant for 18 years. Plaintiff's employment was governed by a written Employment Agreement, which allowed for either party to terminate the employment relationship without cause upon giving sixty (60) days prior written notice to the other party.[2] Mot. for Summ. J. Exhibit 2, Employment Agreement at 3 ¶ 3.

---

[1] The facts set forth are either undisputed or viewed in the light most favorable to plaintiff, the non-moving party.

[2] The Employment Agreement also identified plaintiff's duties as a physician assistant as follows:

On July 10, 2013, plaintiff treated a patient in the emergency department at Mercy Tishomingo for a snake bite ("Snake Bite Patient"). Plaintiff testified in his deposition that after his initial examination of the Snake Bite Patient he determined that the snake bite was nonpoisonous. *See* Mot. for Summ. J. Exhibit 1, Deposition of Samuel J. Tucker at 41 ln. 3-5. Further, plaintiff testified that for a nonpoisonous snake bite the treatment was to give a tetanus toxoid shot, clean the wound with antiseptics, encircle the wound, time and date it, and bandage the wound. *Id*. at ln. 7-10. Lastly, plaintiff testified that he asked the Snake Bite Patient to remain in the emergency room for two to four hours, and that nurse Bobby Priddy ("Priddy") told him that the patient had left and went to the Ardmore Mercy emergency department ("Mercy Ardmore"). *Id*. at 60 ln. 6-10.

On July 11, 2013, Ladonna Culp ("Culp"), Director of Nursing at Mercy Tishomingo, received an email from a nurse at Mercy Ardmore informing Culp that there was no documentation in the online system showing that the Snake Bite Patient had been treated at Mercy Tishomingo. Culp did an investigation into the treatment the Snake Bite Patient received

---

Consistent with Mercy's Policies, Physician Assistant shall prepare complete, timely and accurate medical and other records with respect to the services and treatment rendered to any patient at Practice Location.

\*    \*    \*    \*

Documentation of visits, including transcription, templates, handwritten notes, must be completed, signed and in the chart as soon as possible, but no greater than five (5) working days from the date of the visit. . . . Mercy reserves the right to suspend the Physician Assistant from Mercy for not completing charts in a timely manner. A suspension period will be used by the Physician Assistant to become current with the completion of their medical records. While in suspension, Physician Assistant payment will be held until medical records have been completed.

Mot. for Summ. J. Exhibit 2, Employment Agreement at 1 ¶ 2.1(a).

at Mercy Tishomingo.[3] On July 12, 2013, plaintiff met with Culp and Gary Sharum ("Sharum"), the hospital administrator at Mercy Tishomingo, regarding the treatment the Snake Bite Patient received. Both Sharum and Culp expressed concern about the Snake Bite Patient's information and treatment received not being documented in Epic (the online charting system). Plaintiff testified that he informed Sharum and Culp that he asked the Snake Bite Patient to remain in the emergency room for two to four hours, but she left and went to Mercy Ardmore. *Id.* Shrum and Culp also explained to plaintiff that there was a possible Emergency Medical Treatment and Labor Act ("EMTALA") violation concerning the circumstances surrounding the Snake Bite Patient.[4] During the meeting plaintiff was adamant that he did nothing wrong in treating the

---

[3] Culp interviewed the two employees present in the emergency room when the Snake Bite Patient came in, Paul Thomas and Priddy, as well as the Snake Bite Patient and her mother. All four informed Culp that plaintiff told the Snake Bite Patient that she could not be treated at Mercy Tishomingo because it did not have anti-venom. Further, Priddy told Culp that plaintiff gave him orders to clean the wound and wrap the area, and that plaintiff circled and timed the bite area.

[4] Culp admitted in her March 26, 2015 Declaration that "[i]t is a violation of EMTALA for a hospital to transfer a patient from Mercy Tishomingo to another facility without first registering the patient and then transferring the patient to another facility." Mot. for Summ. J. Exhibit 3, Declaration of LaDonna Culp ¶ 6.

>EMTALA requires that:
>>In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition . . . exists.

42 U.S.C. § 1395dd(a).

>Further,
>>An appropriate transfer to a medical facility is a transfer . . . in which the transferring hospital sends to the receiving facility all

3

Snake Bite Patient because a patient's demographics and documentation are entered late on a weekly basis, *see* Plf.'s Resp. to Mot. for Summ. J. Exhibit 10, Deposition of Samuel Tucker at 66 ln. 19-21, and further, he did not transfer the patient to Mercy Ardmore. Plaintiff further stated that he was so sure he did nothing wrong, that he was willing to resign if the legal department could not get it figured out.[5] *Id.* at 67 ln. 20-21.

On July 26, 2013, Culp and Sharum met with plaintiff again and informed him they had concluded the investigation. Further, plaintiff testified that Sharum told him during the meeting that, as of result of the investigation, he would like for plaintiff to resign because of the incident that occurred on July 10, 2013, and because "[Sharum] [didn't] want a long drawn out legal process regarding this matter." Mot. Summ. J. Ex. 1, Deposition of Samuel Tucker at 75 ln. 3-4 and ln. 7-9. After being instructed to do so by Mercy's Human Resources, on August 7, 2013, plaintiff contacted Darrell Voss ("Voss"), the Mercy Ardmore administrator, via letter, seeking a mediator to mediate the situation between plaintiff and Sharum. In his letter to Voss, plaintiff opposed the recommendation by Sharum to resign and indicated that he had not returned to work since the meeting with Sharum and Culp on July 26, 2013. Mot. Summ. J. Exhibit 5, Plaintiff's

---

> medical records (or copies thereof), related to the emergency condition for which the individual has presented, available at the time of the transfer, including records related to the individual's emergency medical condition, observations of signs or symptoms, preliminary diagnosis, treatment provided, results of any tests and the informed written consent or certification (or copy thereof) provided under paragraph (1)(A), and the name and address of any on-call physician (described in subsection (d)(1)(C) of this section) who has refused or failed to appear within a reasonable time to provide necessary stabilizing treatment; . . . .

42 U.S.C. § 1395dd(c)(2)(C).

[5] Plaintiff explains in his deposition that he offered his resignation as a metaphor, because he thought he was a valued employee. *See* Plf.'s Resp. to Mot. for Summ. J. Exhibit 10, Deposition of Samuel Tucker at 66 ln. 12-13.

August 7, 2013 Letter to Voss. Voss, in turn, referred this dispute to Becky Payton ("Payton"), Vice President of Human Resources. On August 20, 2013, Sharum provided a written response to plaintiff's August 7, 2013 letter to Voss stating that "[i]f [plaintiff] has changed his mind regarding his resignation, then we will exercise our contractual option to not renew his contract." Mot. for Summ. J. Ex. 6, Gary Sharum's August 20, 2013 Letter.

Plaintiff spoke with Payton again, expressing his desire to mediate the situation, and Payton told plaintiff she would look into the situation and get back in contact with him. On August 29, 2013, Payton contacted plaintiff and informed him she agreed with Sharum's decision to terminate plaintiff, and on August 30, 2013, Payton sent plaintiff a letter stating:

> I'm writing regarding the Employment Agreement between Mercy Tishomingo Hospital, Incorporated. . . , and you, dated July 2012, to be effective February 1, 2012. . . . This letter will confirm our agreement to mutually terminate the Agreement effective July 26, 2013. If you have any questions regarding this matter, please call me.

Mot. for Summ. J. Exhibit 7, Becky Payton's August 30, 2013 Letter to Samuel Tucker. According to plaintiff's deposition testimony, plaintiff viewed this letter as a mutual agreement between Payton, Voss, and Sharum to terminate plaintiff as of July 26, 2013 (*See* Mot. for Summ. J. Exhibit 1, Deposition of Samuel J. Tucker at 90 ln. 14-16), because plaintiff maintains that he never resigned his position. *See* Resp. to Mot. for Summ J. Exhibit 10, Deposition of Samuel J. Tucker at 89 ln. 22.

Plaintiff filed this action in the District Court of Oklahoma County on July 25, 2014. On August 18, 2014, defendant removed this action to this Court. In his Complaint, plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII") based on race and national

5

origin discrimination, harassment, and retaliation.[6] Further, plaintiff alleges he is entitled to relief under the Age Discrimination and Employment Act ("ADEA"). Lastly, plaintiff claims that by terminating him without proper notice and without cause, Mercy Tishomingo breached the Employment Agreement between the two parties. Mercy Tishomingo, now moves this Court for summary judgment as to plaintiff's claims of violation of Title VII and the ADEA, and requests for judgment as to the amount of damages plaintiff may recover if he is able to prove a breach of his employment contract, and for the Court to find that plaintiff failed to mitigate his damages.

II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

---

[6] In his response, plaintiff admits that he is not asserting a claim against Mercy Tishomingo for harassment or retaliation; therefore, the Court will not address these claims.

III.  Discussion

   A.  Race and National Origin Discrimination under Title VII

Under Title VII,

> It is unlawful to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

*Khalik v. United Airlines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing 42 U.S.C. § 2000e-2(a)) (internal quotations omitted). For plaintiff to prevail on his Title VII claim alleging discrimination based on race and national origin, he must establish intentional discrimination through either direct or indirect evidence. *See Orr v. City of Albuquerque*, 417 F.3d 1114, 1149 (10th Cir. 2005) (citing *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000)). "If there is no direct evidence of discrimination, the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 (1973), burden-shifting framework is used to indirectly prove intentional discrimination." *Id.* "Pursuant to the *McDonnell Douglas* approach, if a plaintiff can make out a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action." *Id.* (citing *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1226 (10th Cir.2000)). "If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext." *Id.*

To establish a prima facie case for a Title VII discrimination claim, plaintiff must demonstrate: (1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination. *See Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (citing *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2005)). "Plaintiff[] can establish

evidence of the third prong in various ways, such as actions or remarks made by decisionmakers, preferential treatment given to employees outside the protected class, or more generally, upon the timing or sequence of events leading to plaintiff's termination." *Id.* (quotations omitted) (citing *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)). "Plaintiff can also show he was terminated and replaced in a job he was qualified for, because it is facially illogical to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement." *Id. (citing Perry v. Woodward,* 199 F.3d 1126, 1140 (10th Cir.1999)).

Plaintiff asserts that he can establish all three elements of his prima facie case.[7] Mercy Tishomingo contends that plaintiff has not presented any evidence to show he was treated any different than any other similarly situated employee. Plaintiff contends that he has presented more than the "small amount of proof" required to raise an inference of discrimination, satisfying the third element of his prima facie case. *See Orr*, 417 F.3d at 1149 (citing *EEOC v. Flasher Co. Inc.*, 986 F.2d 1312, 1318 (10th Cir. 1992) ("At the prima facie stage, the plaintiff's burden is not onerous, which is evidenced by the small amount of proof necessary to create an inference of discrimination.")). Plaintiff contends a review of the summary judgment evidence indicates that Mercy Tishomingo:

    (a)    fired plaintiff based on a plainly erroneous legal conclusion of Nurse Culp who admits she had no authority to render such an opinion to Defendant;

    (b)    falsely claimed Plaintiff violated EMTALA even though Defendant's risk manager had already concluded he had <u>not</u> done so;

---

[7] It is undisputed that plaintiff has satisfied the first element of being a member of a protected class, and further, for purposes of this motion only, Mercy Tishomingo does not dispute that plaintiff was qualified and satisfactorily performing his job.

(c) fired Plaintiff for reasons it admits did <u>not</u> justify firing Plaintiff after Plaintiff's 18 years of service;

(d) misled Plaintiff concerning the result of its investigation;

(e) fired Plaintiff (who was not responsible for registering patients in the EMR) but failed to even criticize Nurse Priddy, a younger white, natural-born person who was the person primarily responsible for any failure to do so;

(f) purposefully terminated Plaintiff's employment without honoring its contractual obligation to provide him with 60 day advance written notice;

(g) randomly fired Plaintiff even though it believed he was qualified, competent employee who would be difficult to replace and whose absence would cause a significant cost and strain on the limited facility resources available to cover his shifts.

Plf.'s Resp. at 24-25.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds that plaintiff has set forth sufficient evidence to establish a prima facie case against Mercy Tishomingo for race/national origin discrimination. Specifically, the Court finds Mercy Tishomingo maintains that it terminated plaintiff because it "determined that the treatment of the Snake Bite Patient violated Mercy's policies regarding medical screening, treatment, documentation, and transferring patients to a higher level of care." Mot. for Summ. J. at 3. However, Priddy, a younger white male, was not reprimanded for failing to register the Snake Bite Patient in the system, when normally that would have been his job. *See* Mot. for Summ J. Exhibit 1, Deposition of Ladonna Culp at 157 ln. 16-19 and 158 ln. 10. Further, per plaintiff's employment agreement, he would have had five (5) working days from treating the

Snake Bite Patient to document her visit. *See* Mot. for Summ. J. Exhibit 2, Employment Agreement ¶2.1(a). Even though plaintiff and Priddy are not similarly situated employees (since plaintiff was a physician assistant and Priddy is an RN), the fact that Priddy did not receive any criticism for his failure to register the patient, which actually sparked the EMTALA violation investigation since the nurse at Mercy Ardmore could not find the Snake Bite Patient in the system, gives rise to an inference of discrimination sufficient enough for plaintiff to establish the third element of his prima facie case.

Accordingly, the Court finds that plaintiff has presented sufficient evidence to establish a prima face case of race/national origin discrimination pursuant to Title VII. Thus, the Court must now determine whether Mercy Tishomingo proffered a legitimate, non-discriminatory reason for its decision to terminate plaintiff. Having reviewed the parties' submissions, the Court finds that Mercy Tishomingo has proffered a legitimate, nondiscriminatory reason – violation of Mercy Tishomingo's policies in the treatment of the Snake Bite Patient, which included a possible EMTALA violation.

Because Mercy Tishomingo has articulated a legitimate, non-discriminatory reason for its decision, the burden now shifts back to plaintiff to demonstrate that Mercy Tishomingo's proffered reason is pretext. *See Orr*, 417 F.3d at 1149. "Plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (internal citations and quotations omitted). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. *Id.* (internal

citation omitted). Further, "[e]vidence that the employer should not have made the termination decision-for example, that the employer was mistaken or used poor business judgment-is not sufficient to show that the employer's explanation is unworthy of credibility." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007) (citing *Young v. Dillon Co. Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Id.* (citing *Rivera v. City and Cty. of Denver*, 365 F.3d 912, 924-925 (10th Cir. 2004)).

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds that plaintiff has failed to raise a genuine issue of material fact as to Mercy Tishomingo's proffered reason for his termination. Plaintiff contends that since Mercy Tishomingo terminated plaintiff's employment for violating EMTALA when there was never a determination that an EMTALA violation occurred, then Mercy Tishomingo must have terminated plaintiff because of his race/national origin (and age). While plaintiff is not required to present direct evidence of intentional discrimination, there must be enough evidence presented that would allow a reasonable factfinder to discredit Mercy Tishomingo's proffered reason for terminating plaintiff.

Plaintiff contends that after the investigation into the circumstances surrounding the treatment of the Snake Bite Patient had concluded, Culp and Sharum both knew that plaintiff did not violate EMTALA. However, Mercy Tishomingo asserts that "[p]laintiff's treatment of the Snake Bite Patient plus a potential EMTALA violation (which could have exposed Mercy to

11

liability) was the reason the employment relationship ended." Mot. Summ. J. at 22. The Court finds that it was the perceived potential that there could have been an EMTALA violation in the treatment of the Snake Bite Patient that lead to plaintiff's termination, not the fact that plaintiff did or did not violate EMTALA. Further, while the fact that Priddy was not reprimanded for his failure to register the Snake Bite Patient and plaintiff was terminated for his treatment of the Snake Bite Patient was enough for plaintiff to establish his prima facie case, the Court finds, without more, it is not sufficient to show the decision of Mercy Tishomingo to terminate plaintiff was pretextual. In his deposition, plaintiff could not identify one instance where he believed he was treated differently because of his race/national origin (or age) nor could he recall any discriminatory comments directed towards him. Based on the evidenced submitted, the Court finds that Mercy Tishomingo honestly believed that plaintiff's treatment of the Snake Bite Patient could have been a potential EMTALA violation, as well as a violation of its internal policies, and, therefore, Mercy Tishomingo acted in good faith when it terminated plaintiff.

Accordingly, for the reasons set forth above, the Court finds that Mercy Tishomingo is entitled to summary judgment as to plaintiff's Title VII race/national origin discrimination claim.

B. Age Discrimination under the ADEA

The ADEA provides:

> It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; . . .

29 U.S.C. § 623(a)(1). The United States Supreme Court in *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167 (2009), held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Id*. at 180. Following *Gross*, the Tenth Circuit

concluded that the *McDonnell Douglas* framework continues to apply to ADEA claims. *See Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010) ("Although we recognize that *Gross* created some uncertainty regarding burden-shifting in the ADEA context, we conclude that it does not preclude our continued application of *McDonnell Douglas* to ADEA claims."). In order for plaintiff to prove a prima facie case of age discrimination he must show: (1) he is a member of the class protected by the ADEA[8]; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated less favorably than others not in the protected class. *See id.* at 1279.

Mercy Tishomingo asserts that plaintiff is unable to establish a prima facie case because he has not produced any evidence establishing the fourth element. Plaintiff contends that he was replaced by a younger Caucasian.[9] The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds that plaintiff has established a prima facie case against Mercy Tishomingo for age discrimination. Specifically, the Court finds that plaintiff is able to show he was terminated for his role in treating the Snake Bite Patient, and Priddy, a younger male, was not reprimanded for failing to register the Snake Bite Patient in the system, which would have been Priddy's responsibility.

The Court further finds that while plaintiff has established a prima facie case for his age discrimination claim, as with his racial/national origin claim, he has failed to show that Mercy Tishomingo's proffered reason for terminating plaintiff was pretextual. Plaintiff provides no

---

[8] The ADEA protects individuals at least 40 years of age. *See* 29 U.S.C. § 631(a).

[9] Plaintiff was replaced with Steven E. Saltiel, a Caucasian male, who at the time he replaced plaintiff would have been approximately 48 years-old.

evidence that because of his age, Mercy Tishomingo decided to terminate him. As stated previously, Mercy Tishomingo perceived that plaintiff's treatment and handling of the Snake Bite Patient could have been a potential violation of EMTALA, as well as a violation of its internal policies, and, therefore, terminated plaintiff as a result of the perceived (real or not) violations.

Accordingly, the Court finds that Mercy Tishomingo is entitled to summary judgment on plaintiff's age discrimination claim.

C.   Breach of Contract

Mercy Tishomingo concedes there is a genuine issue of material fact as to whether it breached the Employment Agreement between it and plaintiff. Mercy Tishomingo requests the Court to prospectively rule on plaintiff's damages, determining that Payton's August 30, 2013 letter to plaintiff, ending his employment, was the notice that triggered the sixty (60) day notice prior to termination, pursuant to the Employment Agreement. Therefore, Mercy Tishomingo contends plaintiff would only be entitled to damages up until October 29, 2013, if the jury found that Mercy Tishomingo breached plaintiff's employment agreement. Plaintiff contends that Mercy Tishomingo has never given plaintiff the sixty (60) day written notice prior to termination, as required by the Employment Agreement, and, therefore, plaintiff's contractual damages continue to accrue and are on-going.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to the damages amount plaintiff is entitled to if the jury determines that

14

Mercy Tishomingo breached plaintiff's employment agreement. Specifically, the Court finds that the Employment Agreement between plaintiff and Mercy Tishomingo requires that "either party may terminate this Agreement without cause at any time by giving sixty (60) day prior written notice to the other party." Mot. for Summ. J. Exhibit 2, Employment Agreement at 3 ¶ 3. In this instance, Payton's August 30, 2013 letter stated: "This letter will confirm our agreement to mutually terminate the [Employment] Agreement effective July 26, 2013." Mot. for Summ. J. Exhibit 7, Becky Payton's August 30, 2013 letter to Samuel J. Tucker. The Court finds that Payton's letter effectively ended plaintiff's employment as of July 26, 2013; therefore, this letter cannot be considered the sixty (60) day prior written notice required by the employment agreement, since plaintiff had already been terminated approximately a month prior to him receiving Payton's letter.

Accordingly, the Court finds that Mercy Tishomingo is not entitled to summary judgment on the issue of plaintiff's damages.

D.    Mitigation of Damages

"One claiming damages for losses such as back pay has the duty to take such reasonable steps under the circumstances as will minimize those damages." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990) (internal citation and quotations omitted). "A claimant need only make a reasonable and good faith effort, and is not held to the highest standards of diligence." *Id.* (internal citation omitted). The burden is on the employer to establish that the claimant did not exercise reasonable diligence. *See id.* "In order to satisfy the burden, . . . , the defendant must establish (1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such

a position." *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980) (internal citations and quotations omitted).

Mercy Tishomingo contends that plaintiff has made no reasonable attempt to mitigate his damages as required by law and, therefore, is not entitled to recoverable economic damages. Plaintiff contends that subsequent to his employment at Mercy Tishomingo, he has successfully been employed at two clinics. The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether he has mitigated his damages.

Accordingly, Mercy Tishomingo is not entitled to summary judgment as to whether plaintiff has mitigated his damages.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Mercy Tishomingo's Motion for Summary Judgment and Brief in Support [docket no. 16] as follows: (1) the Court GRANTS Mercy Tishomingo's motion as to plaintiff's race/national origin and age discrimination claims; and (2) DENIES Mercy Tishomingo's motion as to determining plaintiff's damages in the event the jury finds Mercy Tishomingo breached plaintiff's employment agreement and as to Mercy Tishomingo's claim that plaintiff failed to mitigate damages.

**IT IS SO ORDERED this 4th day of August, 2015.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE